NATIONWIDE MUTUAL FIRE
INSURANCE COMPANY, a foreign
corporation,

     Plaintiff,

v.                          Case No. 6:14-cv-0749-ORL-28-TBS

KELT, INC., d/b/a U.S. LAWNS OF
ORLANDO, a Florida corporation, and
U.S. LAWNS, INC., a foreign corporation,

     Defendants.

_____/

### DEFENDANT/COUNTER-PLAINTIFF'S, KELT, INC., MOTION TO OVERRULE OBJECTIONS AND COMPEL PLAINTIFF/COUNTER-DEFENDANT TO PROVIDE AMENDED/SUPPLEMENTAL ANSWERS TO KELT'S FIRST SET OF INTERROGATORIES AS WELL AS AMENDED/SUPPLEMENTAL RESPONSE TO KELT'S FIRST REQUEST FOR PRODUCTION

Defendant/Counter-Plaintiff, KELT, INC., d/b/a U.S. LAWNS OF ORLANDO ("Kelt"),

by and through its under attorney and pursuant to Federal Rule of Civil Procedure 37 and Local

Rules 3.01 and 3.04, hereby submits its Motion to Overrule Objections and Compel

Plaintiff/Counter-Defendant, NATIONWIDE MUTUAL INSURANCE COMPANY

("Nationwide"), to provide Amended/Supplemental Answers to Kelt's First Set of

Interrogatories as well as an Amended/Supplemental Response to Kelt's First Request for

Production and states:

## I.      INTRODUCTION:

This case involves issues of whether Nationwide wrongfully withheld defense and

indemnity from Kelt pursuant to its insurance policy. Kelt is a commercial landscape contractor

that, pursuant to a subcontract with U.S. Lawns, Inc. ("USL") (which had the prime contract with

Bank of America ("BOA")), was responsible for landscape maintenance at numerous BOA branch locations including, but not limited to, the branch located at 5655 N. Orange Blossom Trail, Orlando, FL. Pursuant to Kelt's subcontract with USL, Kelt was required, among other things, to defend, indemnify, and hold harmless USL as well as BOA from any claims, suits, damages, etc. arising out of Kelt's performance of landscaping services at BOA locations. Similarly, USL's contract with BOA provided, among things, that USL defend, indemnify, and hold harmless BOA from any claims, suits, damages, etc. arising out of or related to USL's work, which was performed by Kelt.

In February 2007, Eren Henry was shot and killed while a customer at the bank's drive through. The decedent's estate sued BOA and alleged, among other things, that the decedent's death was caused by negligent maintenance of the landscaping at the property. BOA invoked the indemnification provisions of its contract with USL and USL's contract with Kelt. USL also demanded defense and indemnity from Kelt pursuant to the indemnification provision in its contract with Kelt. Kelt promptly notified Nationwide of those claims. Nationwide then deferred a final determination of its duty to defend and indemnify Kelt for those claims for nearly 3 years until it filed this declaratory judgment action to have the Court determine for Nationwide whether Nationwide owed Kelt a duty to defend or indemnify for the various claims Kelt submitted.[1] Kelt has filed a counterclaim against Nationwide for breach of contract. Despite suing Kelt, Nationwide seeks to prevent Kelt from obtaining needed discovery to refute the very claims Nationwide asserts to justify its denial of coverage as well as necessary to prove Kelt's counterclaim.

---

[1] A number of policy provisions are implicated based on facts and circumstances of the case. *See, e.g.*, Request No. 32 at p. 15, *infra*.

## II.    BACKGROUND:

On October 6, 2014, Kelt served it First Set of Interrogatories ("Interrogatories") and First Request for Production ("Request) on Nationwide.[2]  Kelt's email correspondence to Nationwide serving the discovery requests is attached hereto as Exhibit "A."

Pursuant to Rules 33 and 34, Nationwide's Answers and Response were due no later than November 9, 2014.  However, on November 5, Nationwide requested a 30-day extension to respond.  After Kelt expressed concerns about granting a 30-day extension given the March 2, 2015 discovery deadline, the parties agreed on an extension through November 17.  The parties' email exchange from November 5-6 is attached hereto as Exhibit "B."

Nationwide served its Verified Answers to Kelt's Interrogatories and Response to Kelt's Request on the agreed-upon extended deadline of November 17.  Although Nationwide asserted privilege numerous times and presumably withheld information and/or documents pursuant to those assertions of privilege, it did not provide a Privilege Log along with its responses.

Upon review, Kelt identified several deficiencies in Nationwide's Answers and Response.  Kelt thereafter diligently pursued amended and/or supplemental answers and responses from Nationwide in a good faith effort to remedy the deficiencies in Nationwide's Answers and Responses and avoid the instant Motion that Kelt now files with the Court.

On November 20, Kelt sent an extensive email to Nationwide detailing the various deficiencies Kelt contended existed in Nationwide's Answers and Response including, but not limited to, Nationwide's failure to timely provide a privilege log substantiating its assertions of

---

[2]  The Court entered its Case Management and Scheduling Order [Doc. 23] on October 7, 2014 in which it set a Discovery Deadline of March 2, 2015.

privilege. A true and correct copy of Kelt's November 20 email is attached hereto as Exhibit "C."

On November 24, the parties scheduled a conference call for December 2 to discuss the objections asserted and deficiencies in Nationwide's discovery responses. However, the call was postponed to December 8 due to Nationwide's counsel's unexpected last minute unavailability. During the December 8 call, it appeared that the parties may have resolved some issues raised in Kelt's November 20 email and Nationwide appeared to take still more issues under advisement for further reconsideration.

On December 19, Nationwide advised that it was amending its responses. A true and correct copy of Nationwide's December 19 correspondence is attached hereto as Exhibit "D."

Although Nationwide's discovery responses were due on November 17 and although Nationwide had served its responses on that date, Nationwide did not provide its Privilege Log in support of its numerous assertions of privilege until December 19 as an attachment to Exhibit "D."

On February 2, 2015, Nationwide served its Amended Answers, Amended Response, Amended Privilege Log, and supplemental document production on a disc. A true and correct copy of Nationwide's February 2 correspondence and Amended Privilege Log is attached hereto as Exhibit "E."

On February 13, after reviewing Nationwide's February 2 materials, Kelt sent an email to Nationwide seeking confirmation of issues that had seemingly been resolved by Nationwide's amended and/or supplemental responses as well as attempting to resolve those issues that remained in order to avoid having to file a motion to compel. A true and correct copy of Kelt's February 13 email is attached hereto as Exhibit "F."

On February 18, Nationwide responded to Kelt's February 13 email.  A true and correct copy of Nationwide's February 18 email is attached hereto as Exhibit "G."   Despite the passage of 4 months since serving its initial discovery and efforts to resolve them, there continue to be unresolved issues pertaining to Nationwide's responses, thus necessitating this Motion.[3]

## III.      INTERROGATORIES AND ANSWERS AT ISSUE:

Pursuant to Local Rule 3.04(a), the following interrogatories from Kelt's Interrogatories and Nationwide's corresponding original or amended Answers are the subject of this Motion:

**Interrogatory No. 8:** Explain in detail why Kelt's Agreement with USL does not fall under the exception to the assumed liability exclusion as an "insured contract" as provided by section B1b(1) and defined at section F8f or that Kelt "would have in the absence of the contract or agreement" as provided by section B1b(2).

**Amended Answer:**  Objection as this interrogatory seeks an opinion of counsel which is protected by the work-product privilege.

**Interrogatory No. 10:**     Explain in detail the basis for Your contention that the "bodily injury" or "property damage" at issue in the Henry Lawsuit or the USL Lawsuit was "expected or intended from the standpoint of the insured."

**Amended Answer:**  Objection vague and ambiguous as Nationwide does not contend that "the "bodily injury" or "property damage" at issue in the Henry Lawsuit was "expected or intended from the standpoint of the insured."   See the Complaint.

## IV.      GROUNDS FOR OVERRULING OBJECTIONS AND COMPELLING ANSWERS OR BETTER ANSWERS:

Although Nationwide amended its objection to Interrogatory No. 8 following Kelt's November 20 email, its revised objection is also improper.  Much like its predecessor, the new objection merely states a generalized assertion of privilege and fails to provide sufficient information to evaluate its propriety.  See Fed. R. Civ. P. 26(b)(5)(A)(ii); Middle Dist. Discovery

---

[3] Nationwide has now filed a Motion for Summary Judgment [Doc. 27].  Thus, at the same time that it is withholding needed discovery from Kelt, Nationwide is seeking to have judgment entered against Kelt on many of the same issues for which discovery is sought.

(2001) at p. 15 and 17.  For example, it fails to identify to which "counsel" it is referring.  If it is referring to counsel at the time the decision was made "why Kelt's Agreement with USL does not fall under the exception to the assumed liability exclusion as an "insured contract" as provided by section B1b(l) and defined at section F8f or that Kelt "would have in the absence of the contract or agreement" as provided by section B1b(2)" (as opposed to the attorneys representing it in this lawsuit), Nationwide needs to explain when that happened and why that would be protected.[4]

In addition to its stated privilege objection, it appears that Nationwide's refusal to provide an actual answer to Interrogatory No. 8 is based on its claim that the interrogatory is a "contention" interrogatory.  Rule 33(a)(2) explicitly provides that "[a]n interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact."  However, Nationwide appears to take the position that the Middle District Handbook on Discovery Practice (the "Handbook") outlaws the use of so-called "contention" interrogatories.  Although highly persuasive in addressing discovery issues, the Handbook is neither substantive law nor inflexible rule.  Middle Dist. Discovery (2001) at "Introduction."  Further, the Handbook does not support Nationwide's position.  While the Handbook states that such interrogatories should be used "sparingly," it recognizes the value and utility of such interrogatories "(1) to target claims, defenses, or contentions that the propounding attorney reasonably suspects may be the proper subject of early dismissal or resolution or (2) to identify and narrow the scope of unclear claims, defenses, and contentions."  Middle Dist. Discovery (2001) at 16.

---

[4] See discussion, *infra*, regarding assertions of privilege in the context of insurance coverage and breach of contract actions.

Kelt is not seeking a detailed narrative of Nationwide's entire case. It is clear from the documents prepared by Nationwide during its evaluation of the claims and determination of coverage (to the extent such documents have actually been produced), as well as its Complaint in this action, that Nationwide contends, in part, that Kelt was not entitled to defense or indemnity under the "assumed liability" exclusion contained in the policy. [Doc. 1 at ¶¶ 20-21, 45, 51, 56, and 65]. However, that exclusion is subject to an exception for an "insured contract." Nationwide has yet to provide an explanation why that exception would not apply here. Kelt reasonably suspects that this is a potentially dispositive issue. Accordingly, in order to target that claim or to identify and narrow the scope of Nationwide's unclear claim and contention with regards to the "assumed liability" exclusion and "insured contract" exception, Nationwide should be compelled to provide a complete answer to Interrogatory No. 8.

Additionally, it is worth noting that Interrogatory No. 8 is the only "contention interrogatory" that Nationwide has declined to answer. Although its original responses to Interrogatory Nos. 4-7 and 9-10 were blanket objections with no substantive answer, Nationwide amended its responses to those "contention interrogatories" and provided actual answers.[5] Nationwide should be estopped from answering 6 out of 7 "contention interrogatories" and selectively choosing which of its claims and contentions it is going to explain and which one it is not. It should have to provide an answer to Interrogatory No. 8.

Nationwide's objections to Interrogatory No. 10 are unfounded and improper. Nationwide's "vague and ambiguous" objection is insufficient. It is not "stated with specificity" as required by Rule 33(b)(4) and fails to provide sufficient detail to allow counsel or the Court to determine the basis and propriety of the objection. For example, it does not indicate how that

---

[5] Although Nationwide amended is answer to Interrogatory No. 10, its answer remains deficient for other reasons discussed herein.

interrogatory is "vague or ambiguous." In fact, Nationwide cannot credibly claim that the Interrogatory is vague or ambiguous. The quoted language is directly from the subject insurance policy. If the Interrogatory is vague and ambiguous, then so is the policy.[6] Further, the Complaint to which Nationwide's curiously refers at the conclusion of its response explicitly contradicts Nationwide's claim that it "does not contend that "the "bodily injury" or "property damage" at issue in the Henry Lawsuit was "expected or intended from the standpoint of the insured." [Doc. 1 at ¶ 19]. Paragraph No. 19 of the Complaint is the reason Interrogatory No. 10 was propounded in the first place. Moreover, in its February 18 email, Nationwide makes the confounding statement that it, in fact, does make that contention yet the objection stands and it reserves the right to assert that policy provision. Nationwide's objections should be overruled and Nationwide should be compelled to provide the requested information.

## V.      REQUESTS AND RESPONSES AT ISSUE:

Pursuant to Local Rule 3.04(a), the following requests from Kelt's Request and Nationwide's corresponding original or amended response are the subject of this Motion:[7]

**Request No. 1:**       All documents dated on or before May 13, 2014 that are contained in or constitute all or a portion of Nationwide's claims file for Kelt's claims for defense and/or indemnity related to the Henry Lawsuit.

**Amended Response:** Plaintiff objects to the production of the requested documents *created after November 4, 2011*, the date Plaintiff denied the defense of the claim as the requested documents are protected by the *attorney-client privilege* and *work-product doctrine* as set forth in the *privilege log*. Responsive documents not subject to the objection are attached hereto *as they are kept in the usual course of business*.

**Request No. 2:**       All documents contained in or otherwise constituting Nationwide's underwriting file for the Policy from its inception to the present time.

---

[6] While Kelt contends that the Policy is, in fact, vague and ambiguous in several key areas, Nationwide presumably does not.
[7] The issues presented by each response have been italicized to assist the Court.

**Response:**    Objection.  *Overly broad* and the information is not relevant to the subject matter of the pending action or reasonably calculated to lead to the discovery of admissible evidence.   Moreover, the information requested is part of the underwriting file and/or has to do with claims handling and supervision - otherwise known as *"bad faith" discovery*.  Bad faith discovery is not allowed in this cause of action.

**Request No. 3:**    All documents dated on or before May 13, 2014 that are contained in or constitute all or a portion of Nationwide's claims file for Kelt's claims for defense and/or indemnity related to the USL Lawsuit.

**Amended Response:**    Plaintiff objects to the production of the requested *documents created after November 4, 2011*, the date Plaintiff denied the defense of the claim as the requested documents protected by he *attorney-client privilege* and *work-product doctrine* as set forth in the *privilege log*.  The document(s) requested constitute impermissible *bad faith discovery* and is/are not reasonably calculated to lead to the discovery of admissible evidence in this action.   Responsive documents not subject to the objection are attached hereto *as they are kept in the usual course of business*.

**Request No. 4:**    All documents pertaining to, contained in, or otherwise constituting claims manuals, policy manuals, or guidelines pertaining to the investigation, factual inquiry, processing, determination of relevant policy provisions, interpretation of relevant policy provisions, evaluation, analysis, and issuance of coverage determination for claims such as the one(s) submitted by Kelt related to the Henry Lawsuit.

**Response:**    Objection.  The documents requested constitute impermissible *bad faith discovery* and is/are not relevant to the issues in this action.   Also, some potentially responsive documents are protected by the *attorney-client privilege* and *work-product doctrine*.  This request is also *vague and ambiguous* as Kelt was not a defendant in the Henry Lawsuit.  *To the extent* the Plaintiff seeks documents created *after litigation became imminent* or documents subject to the attorney-client privilege, Defendant *will prepare a privileged document log* regarding the same.

**Request No. 5:**    All documents relating to Your investigation, factual inquiry, processing, determination of relevant policy provisions, interpretation of relevant policy provisions, evaluation, analysis, and ultimate denial of Kelt's claim for a defense regarding the Henry Lawsuit.

**Amended Response:**    Objection.  The document(s) requested constitute impermissible *bad faith discovery* and is/are not reasonably calculated to lead to the discovery of admissible evidence in this action.   Also, some potentially responsive documents are protected by the *attorney-client privilege* and *work-product doctrine* as set forth in the *privilege log*.  Responsive documents not

subject to the objection are attached hereto *as they are kept in the usual course of business*.

**Request No. 6:**   All documents relating to Your investigation, factual inquiry, processing, determination of relevant policy provisions, interpretation of relevant policy provisions, evaluation, analysis, and ultimate denial of Kelt's claim for indemnity regarding the Henry Lawsuit.

**Amended Response:**   Objection.  The document(s) requested constitute impermissible *bad faith discovery* and is/are not reasonably calculated to lead to the discovery of admissible evidence in this action.  Also, some potentially responsive documents are protected by the *attorney-client privilege* and *work-product doctrine* as set forth in the *privilege log*.  Responsive documents not subject to the objection are attached hereto *as they are kept in the usual course of business*.

**Request No. 7:**   All documents upon which You relied that form any basis for Your determination not to provide a defense to Kelt related to the Henry Lawsuit.

**Amended Response:**   Plaintiff objects *to the extent* this request seeks documents protected by the *attorney-client privilege* and *work-product doctrine* as set forth in the *privilege log*.  Responsive documents not subject to the objection are attached hereto *as they are kept in the usual course of business*.

**Request No. 8:**   All documents upon which You relied that form any basis for Your determination not to provide indemnity to Kelt related to the Henry Lawsuit.

**Amended Response:**   Plaintiff objects *to the extent* this request seeks documents protected by the *attorney-client privilege* and *work-product doctrine* as set forth in the *privilege log*.  Responsive documents not subject to the objection are attached hereto *as they are kept in the usual course of business*.

**Request No. 9:**   All documents pertaining to, contained in, or otherwise constituting claims manuals, policy manuals, or guidelines pertaining to the investigation, factual inquiry, processing, determination of relevant policy provisions, interpretation of relevant policy provisions, evaluation, analysis, and issuance of coverage determination for claims such as the one(s) submitted by Kelt related to the USL Lawsuit.

**Amended Response:**   Objection.  The document(s) requested constitute impermissible *bad faith discovery* and is/are not reasonably calculated to lead to the discovery of admissible evidence in this action.  Also, some potentially responsive documents are protected by the *attorney-client privilege* and *work-product doctrine* as set forth in the *privilege log*.

**Request No. 10:**   All documents relating to Your investigation, factual inquiry, processing, determination of relevant policy provisions, interpretation of relevant policy provisions, evaluation, analysis, and ultimate denial of Kelt's claim for a defense regarding the USL Lawsuit.

**Amended Response:**   Objection. The document(s) requested constitute impermissible *bad faith discovery* and is/are not reasonably calculated to lead to the discovery of admissible evidence in this action. Also, some potentially responsive documents are protected by the *attorney-client privilege* and *work-product doctrine* as set forth in the *privilege log*. Responsive documents not subject to the objection are attached hereto *as they are kept in the usual course of business.*

**Request No. 11:**   All documents relating to Your investigation, factual inquiry, processing, determination of relevant policy provisions, interpretation of relevant policy provisions, evaluation, analysis, and ultimate denial of Kelt's claim for indemnity regarding the USL Lawsuit.

**Amended Response:**   Objection. The document(s) requested constitute impermissible *bad faith discovery* and is/are not reasonably calculated to lead to the discovery of admissible evidence in this action. Also, some potentially responsive documents are protected by the *attorney-client privilege* and *work-product doctrine* as set forth in the *privilege log*. Responsive documents not subject to the objection are attached hereto *as they are kept in the usual course of business.*

**Request No. 12:**   All documents upon which You relied that form any basis for Your determination not to provide a defense to Kelt related to the USL Lawsuit.

**Amended Response:**   Plaintiff objects *to the extent* this request seeks documents protected by the *attorney-client privilege* and *work-product doctrine* as set forth in the *privilege log*. Responsive documents not subject to the objection are attached hereto *as they are kept in the usual course of business.*

**Request No. 13:**   All documents upon which You relied that form any basis for Your determination not to provide indemnity to Kelt related to the USL Lawsuit.

**Amended Response:**   Plaintiff objects *to the extent* this request seeks documents protected by the *attorney-client privilege* and *work-product doctrine* as set forth in the *privilege log*. Responsive documents not subject to the objection are attached hereto *as they are kept in the usual course of business.*

**Request No. 14:**    All diaries, diary entries, notes, journals, journal entries, memoranda, notices, tasks, and related documents pertaining to the issues involved in this Lawsuit.

**Amended Response:**  Plaintiff objects to the production of the requested *documents created after November 4, 2011*, the date Plaintiff denied the defense of the claim as the requested documents are protected by the *attorney-client privilege* and *work-product doctrine* as set forth in the *privilege log*. Responsive documents not subject to the objection are attached hereto *as they are kept in the usual course of business*.

**Request No. 15:**    All documents memorializing or otherwise pertaining to communications between You and Kelt regarding any of the issues involved in this Lawsuit.

**Amended Response:**  Objection *to the extent* this request seeks the production of documents that constitute Plaintiffs claims file that were *created after November 4, 2011*, the date Plaintiff denied the defense of the claim as the requested documents are protected by the *attorney-client privilege* and *work-product doctrine* as set forth in the *privilege log*. Said document(s) also constitute impermissible *bad faith discovery* and is/are not reasonably calculated to lead to the discovery of admissible evidence in this action. Responsive documents not subject to the objection are attached hereto *as they are kept in the usual course of business*.

**Request No. 16:**    All documents memorializing or otherwise pertaining to communications between You and USL regarding any of the issues involved in this Lawsuit.

**Amended Response:**  Objection *to the extent* this request seeks the production of documents that constitute Plaintiffs claims file that were *created after November 4, 2011*, the date Plaintiff denied the defense of the claim as the requested documents are protected by the *attorney-client privilege* and *work-product doctrine* as set forth in the *privilege log*. Said document(s) also constitute impermissible *bad faith discovery* and is/are not reasonably calculated to lead to the discovery of admissible evidence in this action. Notwithstanding said objection, communications between Plaintiff and USL *as they are kept in the usual course of business* are attached hereto.

**Request No. 17:**    All documents memorializing or otherwise pertaining to communications between You and Bank of America regarding any of the issues involved in this Lawsuit.

**Amended Response:**  Objection *to the extent* this request seeks the production of documents that constitute Plaintiffs claims file that were *created after November 4, 2011*, the date Plaintiff denied the defense of the claim as the requested

documents are protected by the *attorney-client privilege* and *work-product doctrine* as set forth in the *privilege log*. Said document(s) also constitute impermissible *bad faith discovery* and is/are not reasonably calculated to lead to the discovery of admissible evidence in this action. Notwithstanding said objection, all communications between Plaintiff and Bank of America *as they are kept in the usual course of business* are attached hereto.

**Request No. 18:**    All documents memorializing or otherwise pertaining to communications between You and any other person or entity regarding any of the issues involved in this Lawsuit.

**Amended Response:** Objection *to the extent* this request seeks the production of documents that constitute Plaintiff's claims file that were *created after November 4, 2011*, the date Plaintiff denied the defense of the claim as the requested documents are protected by the *attorney-client privilege* and *work-product doctrine* as set forth in the *privilege log*. Said document(s) also constitute impermissible *bad faith discovery* and is/are not reasonably calculated to lead to the discovery of admissible evidence in this action. Notwithstanding said objection, all communications between it and any other person or entity regarding any of the issue in this lawsuit *as they are kept in the usual course of business* are attached hereto.

**Request No. 19:**    All documents memorializing or otherwise pertaining to statements made by Kelt regarding any of the issues involved in this Lawsuit.

**Amended Response:** Objection *to the extent* this request seeks the production of documents that constitute Plaintiff's claims file that were *created after November 4, 2011*, the date Plaintiff denied the defense of the claim as the requested documents are protected by the *attorney-client privilege* and *work-product doctrine* as set forth in the *privilege log*. Said document(s) also constitute impermissible *bad faith discovery* and is/are not reasonably calculated to lead to the discovery of admissible evidence in this action. Notwithstanding said objection, Plaintiff took no statement from USL.

**Request No. 20:**    All documents showing or tending to show that "Kelt did not accept the tender of the defense and demand for indemnification from USL" as alleged at Paragraph No. 33 of Your Complaint in this action.

**Amended Response:** Objection. The use of the term "all documents" is *overly broad* and this request *potentially seeks* documents that are protected by the *attorney-client privilege* and *work-product doctrine*.

**Request No. 21:**    All documents showing or tending to show that the Henry Lawsuit did not make any allegations of bodily injury arising from Kelt's acts or omissions.

**Amended Response:** Objection. The use of the term "all documents" is *overly broad* and this request *potentially seeks* documents that are protected by the *attorney-client privilege* and *work-product doctrine*.

**Request No. 22:** All documents showing or tending to show that the contract between Kelt and USL is not an "insured contract" as defined by the Policy.

**Amended Response:** Objection. The use of the term "all documents" is *overly broad* and this request *potentially seeks* documents that are protected by the *attorney-client privilege* and *work-product doctrine*.

**Request No. 23:** All documents showing or tending to show that Kelt would not have liability for the incident that formed the basis of the Henry Lawsuit in the absence of its contract or agreement with USL.

**Amended Response:** Objection. The use of the term "all documents" is *overly broad* and this request *potentially seeks* documents that are protected by the *attorney-client privilege* and *work-product doctrine*.

**Request No. 24:** All documents showing or tending to show that Kelt's liability or potential liability for the incident that formed the basis of the Henry Lawsuit was "due to rendering or failure to render any professional service."

**Amended Response:** Objection. The use of the term "all documents" is *overly broad* and this request *potentially seeks* documents that are protected by the *attorney-client privilege* and *work-product doctrine*.

**Request No. 25:** All documents showing or tending to show that the damages alleged, anticipated, and that arose out of the Henry Action were or are not covered by the Policy.

**Amended Response:** Objection. The use of the term "all documents" is *overly broad* and this request *potentially seeks* documents that are protected by the *attorney-client privilege* and *work-product doctrine*.

**Request No. 26:** All documents showing or tending to show that the damages alleged and anticipated from the USL Lawsuit are not covered by the Policy.

**Amended Response:** Objection. The use of the term "all documents" is *overly broad* and this request *potentially seeks* documents that are protected by the *attorney-client privilege* and *work-product doctrine*.

**Request No. 27:** All documents showing or tending to show that the damages alleged and anticipated from the USL Lawsuit do not constitute "bodily injury,"

"property damage" or "personal and advertising injury" as defined in the Policy.

**Amended Response:** Objection. The use of the term "all documents" is *overly broad* and this request *potentially seeks* documents that are protected by the *attorney-client privilege* and *work-product doctrine*.

**Request No. 28:** All documents showing or tending to show that the damages alleged and anticipated from the USL Lawsuit do not constitute an "occurrence" as defined in the Policy.

**Amended Response:** Objection. The use of the term "all documents" is *overly broad* and this request *potentially seeks* documents that are protected by the *attorney-client privilege* and *work-product doctrine*.

**Request No. 29:** All documents showing or tending to show that the damages alleged and anticipated from the USL Lawsuit were known by Kelt prior to being incurred and thus do not trigger the insuring agreement of the Policy.

**Amended Response:** Objection. The use of the term "all documents" is *overly broad* and this request *potentially seeks* documents that are protected by the *attorney-client privilege* and *work-product doctrine*.

**Request No. 30:** All documents showing or tending to show that the damages alleged and anticipated from the USL Lawsuit were expected or intended from the standpoint of Kelt and thus excluded by the Policy.

**Amended Response:** Objection. The use of the term "all documents" is *overly broad* and this request *potentially seeks* documents that are protected by the *attorney-client privilege* and *work-product doctrine*.

**Request No. 32:** All documents regarding the application and/or interpretation of the following provisions contained in the Policy:
   a. A1a from Endorsement ACP-0123 of the Policy (i.e., Coverages, Business Liability);
   b. A1b from Endorsement ACP-0123 of the Policy (i.e., Coverages, Business Liability);
   c. B from Endorsement ACP-0123 (i.e., Definition of "Manifests");
   d. B1 from Endorsement ACP-0013 (i.e., Additional Insured – Exclusions);
   e. B2 from Endorsement ACP-0013 (i.e., Additional Insured – Exclusions);
   f. B1a (i.e., Exclusions – expected injury);
   g. B1b(1) (i.e., Exclusions – assumed liability - exception);
   h. B1b(2) (i.e., Exclusions – liability - exception);
   i. B1j (i.e., Exclusions – professional service);

j.   E2d (i.e., Liability and Medical Expenses General Conditions – voluntary payment);

k.   F2 (i.e., Definition of "Bodily Injury");

l.   F8f (i.e., Definition of "Insured Contract");

m.   F12 (i.e., Definition of "Occurrence"); and

n.   F21 (i.e., Definition of "Your Work").

**Response:**   Objection. The documents requested constitute impermissible *bad faith discovery* and is/are not relevant to the issues in this action. Also, some potentially responsive documents are protected by the *attorney-client privilege* and *work-product doctrine*. To the extent the Plaintiff seeks documents created after litigation became imminent or documents subject to the attorney-client privilege, Defendant *will prepare a privileged document log* regarding the same. Notwithstanding said objection *see the Complaint for Declaratory Relief including the applicable insurance policy(ies), Henry Lawsuit pleadings, USL lawsuit pleadings and all other exhibits to the Complaint, Answer and Affirmative Defenses to Kelt Inc.'s Counterclaim, and Answer and Affirmative Defenses to U.S. Lawn's Counterclaim as well as all documents produced pursuant to Rule 26 Disclosures by all parties.*

**Request No. 33:**   All documents relating in any way whatsoever to Your ability and opportunity to participate in the Henry Lawsuit.

**Response:**   Objection *vague and ambiguous*. The document(s) requested constitute impermissible *bad faith discovery* and is/are not relevant to the issues in this action. Also, some potentially responsive documents are protected by the *attorney-client privilege* and *work-product doctrine*. To the extent the Plaintiff seeks documents *created after litigation became imminent* or documents subject to the *attorney-client privilege*, Defendant *will prepare a privileged document log* regarding the same. Notwithstanding said objection *see the Complaint for Declaratory Relief including the applicable insurance policy(ies), Henry Lawsuit pleadings, USL lawsuit pleadings and all other exhibits to the Complaint, Answer and Affirmative Defenses to Kelt Inc.'s Counterclaim, and Answer and Affirmative Defenses to U.S. Lawn's Counterclaim as well as all documents produced pursuant to Rule 26 Disclosures by all parties.*

**Request No. 34:**   All documents regarding notification to You of the Henry Lawsuit.

**Amended Response:**   Objection *vague and ambiguous*. The document(s) requested constitute impermissible *bad faith discovery* and is/are not relevant to the issues in this action. Also, some potentially responsive documents are protected by the *attorney-client privilege* and *work-product doctrine*. Responsive documents not subject to the objection are attached hereto *as they are kept in the usual course of business*.

**Request No. 35:**     All documents regarding notification to You of settlement negotiations in the Henry Lawsuit.

**Amended Response:** Objection *vague and ambiguous*.  The document(s) requested constitute impermissible *bad faith discovery* and is/are not relevant to the issues in this action.  Also, some potentially responsive documents are protected by the *attorney-client privilege* and *work-product doctrine*.  Responsive documents not subject to the objection are attached hereto *as they are kept in the usual course of business*.

**Request No. 36:**     All documents regarding notification to You of the settlement of the Henry Lawsuit.

**Amended Response:** Objection *vague and ambiguous*.  The document(s) requested constitute impermissible *bad faith discovery* and is/are not relevant to the issues in this action.  Also, some potentially responsive documents are protected by the *attorney-client privilege* and *work-product doctrine*.  Responsive documents not subject to the objection are attached hereto *as they are kept in the usual course of business*.

## VI.     GROUNDS FOR OVERRULING OBJECTIONS AND COMPELLING ANSWERS OR BETTER ANSWERS:

As the Court can see, Nationwide has asserted many of the same objections to many of Kelt's requests.[8]  Additionally, Nationwide's objections appear limited to a somewhat narrow set of particular issues, some of which are interrelated.  In the hopes of presenting this matter in an efficient way, Kelt has organized the following section of its Motion by those issues.

### A.     Improper Bad Faith and Privilege Objections:

Nationwide has refused to produce documents responsive to many of Kelt's requests based on the contention that the requests constitute "impermissible bad faith discovery."  Further, Nationwide's "bad faith" objections also involve concurrent assertions of privilege regarding the requested materials.  Nationwide asserted "bad faith" objections to Request Nos. 2-6, 9-11, 15-19, and 32-36.  Further, although Nationwide removed its original reference to "bad faith" when it provided its Amended Responses to Request Nos. 1 and 12-14, it appears to have

---

[8]  Request Nos. 1 and 14; Request Nos. 3 and 15-19; Request Nos. 5, 6, 10, and 11; Request Nos. 7, 8, 12, and 13; Request Nos. 32-33; Request Nos. 34-36.

simply replaced the "bad faith" references with references to "documents created after November 4, 2011." That date appears to be the date on which Nationwide claims "litigation became imminent." Thus, although the term "bad faith" has been removed, it is apparent that Nationwide contends that anything created after that date constitutes either "bad faith" discovery or materials that are privileged.

Nationwide's "bad faith" objections, as well as its assertions of work-product and attorney-client privileges, are unfounded. This is by no means a novel argument by an insurance company to deny necessary discovery to an insured in a case like this. The District Courts in this state have previously addressed these very issues and ruled in favor of the insured.

Contrary to Nationwide's contention, an insurer's entire claims and underwriting files are not per se privileged in cases like this.[9] At a minimum, an insurer has to produce all documents in its claims files prepared before a final decision was reached on an insured's claim.[10] There is also support for the production of documents created even after the date of the denial letter.[11] Claims manuals and guidelines for the interpreting policy provisions are also discoverable in cases like this.[12] Kelt's requests track the language found in those cases to focus on those records the District Courts in Florida have specifically found discoverable in cases such as this one. "[Kelt] is not seeking information as to whether [Nationwide] improperly handled [Kelt's]

---

[9] *St. Joe Co. v. Liberty Mut. Ins. Co.*, 2006 U.S. Dist. LEXIS 85260; 2006 WL 3391208 (M.D. Fla. 2006) (finding that federal courts regularly permit discovery of an insurer's claims file and that there is no all encompassing privilege which protects claims files); *Mosley v. Am. Home Assur. Co.*, 2013 U.S. Dist. LEXIS 168016; 2013 WL 6190746 (S.D. Fla. 2013) (ordering insurer to produce its underwriting files and application for the policy at issue); *Milinazzo v. State Farm Ins. Co.*, 247 F.R.D. 691 (S.D. Fla. 2007) (holding that claims materials pertaining to evaluation before an insurer officially denies coverage is not privileged).

[10] *Mosley*, *supra*.

[11] *Id.* at *8 (finding that "'[e]ven after litigation is justifiably anticipated,' as it is after a final letter of denial is issued, 'routine and ordinary investigations or reports are not work product and may be obtained as normal discovery without a special showing of need.'").

[12] *Auto Owners Ins. Co. v. Totaltape, Inc.*, 135 F.R.D. 199, 203 (M.D. Fla. 1990).

claim[s]; rather [Kelt] seeks to prove [Nationwide] owes [Kelt] a duty to defend or indemnify it" for the multiple claims submitted.[13] This discovery should be permitted.

Furthermore, Nationwide's assertions of attorney-client privilege cannot stand. Unlike a claim of attorney-client privilege made by an individual, a claim of privilege raised by a corporation is subject to a "heightened level of scrutiny." *Milinazzo*, 247 F.R.D. at 697 (quotations in original). The attorney-client privilege does not apply when an attorney is providing purely business advice in the ordinary course of business. *St. Joe Co.*, 2006 U.S. Dist. LEXIS 85260; 2006 WL 3391208. Significantly, the investigation of claims and determination of coverage are in the ordinary course of business for an insurance company. *Milinazzo*, 247 F.R.D. at 701. Thus, in an insurance coverage context, the attorney-client privilege only attaches when an attorney performs acts for an insurer in his professional capacity and when there is the strong anticipation of litigation. *Id.* at 697. Litigation is not strongly anticipated until after a formal denial letter is issued. *Mosley*, *supra*; *Milinazzo*, 247 F.R.D. at 697.

Nationwide's use of November 4, 2011 as the demarcation between discoverable and privileged materials is also unfounded. As Nationwide admits in its February 18 email, November 4, 2011 is the date on which it denied providing a defense for BOA. That is *not* the date on which Nationwide denied a defense for its insured, Kelt. In fact, Nationwide *never* denied a defense or indemnity to Kelt for any of the claims Kelt submitted. The first "formal denial" of a defense for Kelt occurred when Nationwide filed the instant lawsuit seeking a declaration that it did not owe a defense to Kelt. Accordingly, the date that should serve as the demarcation between discoverable and potentially privileged materials requested by Kelt is May 13, 2014 when this lawsuit was filed. Every document listed in Nationwide's Amended Privilege Log is from before May 13, 2014. In other words, as explicitly stated in the requests,

---

[13] *St. Joe Co., supra.*

Kelt has not requested any documents that were created after the date on which Nationwide finally "denied" coverage to Kelt and, thus, none of those documents are privileged or otherwise immune from discovery. Nationwide's "bad faith" objections, privilege objections, and objection to producing materials dated after November 4, 2011 should be overruled and it should be compelled to produce all documents responsive to Request Nos. Request Nos. 1-6, 9-12, 14-19, and 32-36.

**B.     Improper Generalized Assertions Of Privilege
         And Untimely And Deficient Privilege Log:**

In addition to the deficiencies in Nationwide's assertions of privilege discussed above, some of Nationwide's assertions of privilege are otherwise deficient. Nationwide's assertions of privilege in response to Request Nos. 4, 7-8, 12-13, and 32-33 are prefaced by "to the extent" privilege applies, which is inherently non-specific. Generalized assertions of privilege that are not supported by a statement of particulars (i.e. a privilege log) are improper and will be rejected. Middle Dist. Discovery (2001) at pp. 14-15, and 17. Pursuant to Rule 26(b)(5):

> A party that "withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material…the party must expressly make the claim and describe the nature of the documents, communications, or tangible things not produced or disclosed - and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."

> *See also*, Middle Dist. Discovery (2001) at p. 17.

Privilege logs should be provided contemporaneously with the response to the request for production in which the assertion of privilege is made. The failure to provide such a log has resulted in findings of waiver of privilege. *See Id.* at p. 11. The Court should reject and overrule all such objections contained in Nationwide's discovery responses and compel production of the documents withheld.

Moreover, in its original Response, Nationwide stated "[t]o the extent the Plaintiff seeks documents created after litigation became imminent or documents subject to the attorney-client privilege, Defendant will prepare a privileged document log regarding the same."[14] However, no such privilege log was provided contemporaneously with Nationwide's Response. Further, Nationwide provided no indication when such privilege log would be forthcoming.

Nationwide did not provide its Privilege Log until December 19, 2014, more than a month after Nationwide's Response was served and only after Kelt sent its November 20 email. Nationwide thereafter provided an Amended Privilege Log on February 2. In addition to being untimely, however, the Privilege Logs are deficient because they fail to itemize each document withheld and fail to indicate the requests to which each of the purportedly privileged documents is responsive. As a result, Kelt is unable to determine the extent of the documents withheld or the propriety of Nationwide's assertions of privilege. For these reasons and the reasons set forth above, Nationwide's assertions of privilege for any documents created before May 13, 2014 should be overruled. At a minimum, the Court should conduct an in camera inspection of those materials to determine whether Nationwide's assertions of privilege are appropriate.

### C.    Improper Nonspecific "Vague and Ambiguous" Objections:

In response to Request Nos. No. 2, 4, and 33-36, Nationwide asserted unsubstantiated objections that the requests were "overly broad" and/or "vague and ambiguous." There is no indication why the requests are vague or ambiguous. "Objections that state merely that a discovery request is 'vague, overly broad, or unduly burdensome' are, by themselves, meaningless, and are deemed without merit." *Milinazzo*, 247 F.R.D. at 695. Furthermore, upon review of those requests, it is not apparent at all how those requests could be considered overly

---

[14] Although Nationwide subsequently amended that reference to refer to the privilege log it had eventually provided, the reference remained in response to Request Nos. 4 and 32-33.

broad, vague, or ambiguous.  The Court should overrule those objections and compel Nationwide to provide any documents withheld pursuant to those objections.

### D. Improper Production Of Documents "As They Are Kept In The Usual Course Of Business:"

To the extent Nationwide produced documents in response to Kelt's Request, it did so either by generic reference to various pleadings and other court filings[15] in this case or "as they are kept in the usual course of business."[16]  Kelt does not dispute that Rule 34(b)(2)(E)(i) permits a party to "produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request."  However, the Rule implies and the Handbook makes clear that, while permitted, producing documents as they are kept in the ordinary course of business requires more than merely doing a "document dump" on the requesting party.  The Handbook[17] provides that:

> If the documents are produced as they are kept in the usual course of business, the producing party has an obligation to explain the general scheme of record-keeping to the inspecting party. The objective is to acquaint the inspecting party generally with how and where the documents are maintained.  If the documents are produced to correspond with the categories in the request, some reasonable effort should be made to identify certain groups of the produced documents with particular categories of the request or to provide some meaningful description of the documents produced. The producing party is not obligated to rearrange or reorganize the documents.

In this case, although Kelt addressed this issue in its November 20 email, Nationwide retained in its original responses to Request Nos. 32 and 33, and after asserting various objections, directed Kelt to a number of court filings.  To the extent Nationwide revised many of its original responses to remove those repeated references, it merely replaced those references

---

[15] Request Nos. 32 and 33.
[16] Request Nos. 1, 3, 5-8, 10-18, and 34-36.
[17] Middle District Discovery (2001) at p. 13; *See also, Id.* at p. 10-11.

with a statement that it has produced documents "as they are kept in the usual course of business."

However, despite claiming that it was producing or had produced documents "as they are kept in the usual course of business," Nationwide simply produced documents *en masse*. The documents were certainly not produced to indicate the Request to which they are responsive. Nationwide did not provide any sort of spreadsheet or matrix indicating what documents were being produced or to which Request(s) each of the documents produced is responsive.

Further, it would be quite surprising if the manner in which the documents were produced is, in fact, the manner in which Nationwide keeps and maintains them in the usual course of its business. The documents, as produced in discovery in this case, were not separated in any discernible manner. Although each document was produced as a separate computer file, there were no file folders. There were no dividers. There was no indication whatsoever of where they were kept and maintained at Nationwide's offices or by whom. It is hard to believe that Nationwide simply has nearly 200+ documents consisting of approximately 1,000+ pages just sitting in a pile in its office.

Thus, even with the resolution of some of the issues with Nationwide's objections, Kelt is still left to search the haystack to find the needle. That issue is compounded by Furthermore, when combined by Nationwide's various and numerous objections to every one of Kelt's requests. It is virtually impossible, with the possible exception of the 11 items generally listed in the Amended Privilege Log, for Kelt to determine whether and to what extent Nationwide has or has not produced responsive documents. The Court should require Nationwide to produce documents responsive to Kelt's Request as required by the Federal Rules and the guidelines of this Court.

### E.  Untimely New Objections:

Finally, Nationwide has asserted the following new objections to Request Nos. 20-30 and:  "Objection.  The use of the term 'all documents' is overly broad and this request potentially seeks documents that are protected by the attorney-client privilege and work-product doctrine." Nationwide did not raise it in its original Response.  As a result, Nationwide waived them.  *See, e.g.*, Middle Dist. Discovery (2001) at p. 11.

Apart from the fact that those objections have been waived for failing to timely raise them, they are also deficient for many of the reasons already discussed above.  First, simply stating that a request is "overly broad" is nonspecific and insufficient.  Second, generalized or conditional assertions of privilege (e.g. "potentially seeks") are improper and should be rejected. Third, virtually every Request used the term "all documents."  However, Nationwide did not object to every request on that basis.  Nationwide fails to indicate how it is that that term was objectionable for these 15 Requests but not for the 22 others.  Fourth, the term "documents" is a defined term.  Fifth, it is not "overly broad."  It is certainly all encompassing to ensure that there is no misunderstanding as to what the term is to mean and include.  However, that does not render the term overly broad.  The Court should deem these new objections waived or otherwise overrule them for being deficient or unfounded.

## VII.  CERTIFICATE OF COMPLIANCE WITH RULE 37(a)(1) AND LOCAL RULE 3.01(g):

Pursuant to Rule 37(a)(1) and Local Rule 3.01(g) and as set forth in the above "Background," Kelt hereby certifies that it conferred extensively with Nationwide in a good faith effort to resolve the issues raised by this Motion. However, while counsel were able to resolve a number of issues related to Nationwide's original discovery responses, they were not able to

resolve all of the issues that existed. This Motion addresses only the issues that counsel were unable to resolve.

Respectfully submitted on February 23, 2015 by:

/s/Brett A. Marlowe
Brian W. Bennett, Esquire
Florida Bar No. 0104256
Brett A. Marlowe, Esquire
Florida Bar No. 0310920
PAGE, EICHENBLATT & BENNETT, P.A.
214 East Lucerne Circle
Orlando, Florida 32801
Phone: 407-386-1900
Fax:    407-209-1006
Email: bbennett@floridalawonline.com (Primary)
bmarlowe@floridalawonline.com (Primary)
bdillon@floridalawonline.com (Secondary)
Attorneys for Defendants

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 23, 2014, I electronically filed the foregoing with the Clerk of the Court by using the ECF system which will send a notice of electronic filing to the following:

Eric Thiel, Esquire
Trevor T. Rhodes, Esquire
Banker Lopez Gassler, P.A.
501 East Kennedy Boulevard, Suite 1500
Tampa, Florida 33602
Email: ethiel@bankerlopez.com (Primary)
trhodes@bankerlopez.com (Primary)
service-trhodes@bankerlopez.com (Secondary)

/s/Brett A. Marlowe
Brett A. Marlowe, Esquire