IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

NATIONWIDE MUTUAL FIRE
INSURANCE COMPANY, a foreign
Corporation
    Plaintiff,
v.
KELT, INC., d/b/a U.S. LAWNS OF
ORLANDO, a Florida Corporation, and
U.S. LAWNS, INC., a foreign corporation,
    Defendants.
_____/

Case No. 6:14-cv-0749-ORL-28-TBS

## DECLARATION OF FRANK THOUBBORON

STATE OF NORTH CAROLINA

COUNTY OF WAKE

Frank Thoubboron, pursuant to 28 U.S.C. § 1746 of the United States Code, hereby declares the following under penalty of perjury:

1. That he is employed as a Field Claim Consultant for Nationwide Mutual Fire Insurance Company and has personal knowledge of the matters set forth herein.

2. Between October 19, 2011, the date Nationwide received notice of the lawsuit filed by Sydny Scoon Henry against Bank of America, and November 4, 2011, Nationwide began its investigation of the claim.

3. As early as October 26, 2011, Nationwide recognized that the complaint did not trigger any duty to defend either Bank of America or U.S. Lawns. In addition, I noted in the claims diary that "[w]e well may have to defend US Lawns as add'l insured, but not BOA."

4. Nationwide informed Bank of America that it was not an additional insured under Kelt's policy and that Nationwide would not provide it a defense by letter dated November 4,

2011. At the same time, Nationwide informed U.S. Lawns that while it was listed as an additional insured, Nationwide would not provide a defense to Bank of America, but would consider defending U.S. Lawns if it were sued.

5. At the time these letters were sent, Nationwide recognized that it could be sued by Bank of America, US Lawns, or Kelt for its refusal to accept the defense or indemnity of the claims brought against Bank of America in the Henry Lawsuit.

6. Nationwide also understood that a lawsuit was likely after March 12, 2012, when Kelt informed it that U.S. Lawns' insurer agreed to defend and indemnify Bank of America and placed Kelt on notice that it would seek indemnity from Kelt according to the terms and conditions of their Subcontract.

7. The possibility of a lawsuit against Nationwide became imminent on May 1, 2013, when Kelt advised Nationwide that U.S. Lawns settled the lawsuit and was demanding that Kelt indemnify it for the settlement and defense costs pursuant to the subcontract between the parties.

8. By letter dated June 13, 2013, Nationwide denied U.S. Lawns' claim for indemnity and reserved all rights under the policy.

9. On April 22, 2014, Kelt was served with a lawsuit in which U.S. Lawns was suing it for damages associated with defending and settling the Henry Lawsuit.

10. On April 24, 2014, Nationwide expected to be sued in some sort of declaratory judgment, and decided to proceed with a declaratory judgment action of its own on May 1, 2014.

11. Nationwide hired its present attorney's at Banker Lopez Gassler on May 2, 2014 for purposes of bringing this declaratory judgment action. Kelt was notified that its claim was to be denied the same day.

12. The documents contained in the file pertaining to this claim span a time when Nationwide was transitioning from paper to paperless. Nationwide maintained a paper file for documents that were mailed or received by mail. These documents were scanned into a .pdf file for production in this matter.

13. In addition to the paper file, Nationwide maintains a paperless file that is linked with the claims notes. The notes and images cannot be changed after they are logged. Each "image" is a numbered file that corresponds to a .pdf file named as [file number]-[image number]. The claims notes and corresponding images are therefore arranged in chronological order.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 6, 2015, at Raleigh, North Carolina.

_____
Frank Thoubboron