UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

NATIONWIDE MUTUAL FIRE
INSURANCE COMPANY,

     Plaintiff,

v.                             Case No:   6:14-cv-749-Orl-41TBS

KELT, INC. and U.S. LAWNS, INC.,

     Defendants.

_____

## ORDER

     This matter comes before the Court on the Motions of Defendants Kelt, Inc. and US Lawns, Inc. to Overrule Objections and Compel Plaintiff/Counter-Defendant to Provide Amended/Supplemental Answers to Interrogatories and Amended/Supplemental Responses to Requests for Production (Docs. 30, 31).   The motions are due to be **GRANTED in part** and **DENIED in part**.

### Factual and Procedural Background

     In February 2007, Eren Henry was shot and killed during an attempted robbery at a Bank of America ("BOA") branch in the Rosemont neighborhood of Orlando (Doc. 1, ¶ 27; Doc. 1-4 at 2).   Two years later, Henry's estate brought a wrongful death action against BOA, alleging that it negligently failed to take measures to increase security at the branch and that its negligence resulted in Henry's death (Doc. 1, ¶¶ 27-28; Doc. 1-4 at 4-5). One of the estates' claims was that BOA had allowed landscaping and other obstructions to interfere with natural surveillance at the branch, thereby creating an opportunity for crime to occur in the parking lot and around the drive-through facilities where Henry was shot (Doc. 1-4, ¶ 15(m)).

On September 1, 2011, BOA sent its landscaping contractor, Defendant US

Lawns, Inc., a letter demanding that US Lawns defend BOA in the wrongful death suit and

pay any judgment or settlement pursuant to an indemnification clause in the contract

between the two (Doc. 1, ¶ 29).   US Lawns relayed this demand to its liability insurer,

National Union Fire Insurance Co. (Doc. 1-5, ¶ 15).   US Lawns also demanded that its

subcontractor, Defendant Kelt, Inc., provide BOA a defense and indemnification pursuant

to the subcontract between US Lawns and Kelt (Doc. 1-5, ¶ 16).   Kelt notified its own

liability insurer, Plaintiff Nationwide Mutual Fire Insurance Co., of US Lawns' demand

(Doc. 1-5, ¶ 15; Doc. 26, ¶ 3; Doc. 38-1, ¶ 15).

On November 4, 2011, Nationwide responded that it would not defend or indemnify

BOA in the wrongful death action because in Nationwide's view, BOA was not an

additional insured under the policy it issued to Kelt (Doc. 26-3).   Nationwide added that it

had "seen no evidence that this crime resulted from [Kelt's] work of mowing and tending

shrubs, etc."   (Id.).   Nationwide said it would consider defending US Lawns, which was

listed as an additional insured under Kelt's policy, only when US Lawns was actually sued

(Id.).

In March 2012, National Union agreed to defend and indemnify BOA on US Lawns'

behalf, and once again, US Lawns demanded indemnity from Kelt under the terms of the

subcontract (Doc. 1-5, ¶ 16, Doc. 26, ¶ 6, Doc. 34, ¶ 6; Doc. 38-1, ¶ 14).   Kelt informed

Nationwide of this demand and Nationwide declined to provide BOA with a defense

(Doc. 1-5, ¶ 17, Doc. 26, ¶ 7, Doc. 38-1, ¶ 15).

Ultimately, Eren Henry's estate agreed to settle its wrongful death suit against

BOA for $75,000 (Doc. 38-1, ¶ 16).   Once the parties reached this agreement in

principle, US Lawns notified Kelt of the anticipated settlement and demanded indemnity

(Doc. 26, ¶ 8; Doc. 38-1, ¶ 16).   Kelt forwarded the demand to Nationwide, which on June 5, 2013 sent Kelt a letter denying any duty to indemnify BOA (Doc. 26, ¶¶ 8-9; Doc. 26-4; Doc. 38-1, ¶ 17).   In the letter, Nationwide said that under its policy, it had no duty to indemnify US Lawns for the costs US Lawns incurred to defend BOA and settle the case (Doc. 26-4).   In November 2013, the court presiding over the wrongful death suit approved the settlement (Doc. 45-1, ¶ 19).   Then the parties executed the settlement agreement and the suit was dismissed on January 27, 2014 (Id.).

US Lawns incurred $136,772 in attorney's fees and costs to defend BOA in the wrongful death suit (Doc. 1-5, ¶ 19).   Because these expenses and the $75,000 settlement sum were less than the $250,000 deductible in its National Union insurance policy, the defense of BOA cost US Lawns $211,772 (Doc. 1, ¶¶ 34, 14; Doc. 1-5, ¶ 25).   On April 10, 2014, US Lawns sued Kelt in state court for indemnity under the subcontract (Doc. 1, ¶¶ 35-43; Doc. 1-5).   Perhaps anticipating that Kelt would join it as a third party, Nationwide filed this action for a declaratory judgment that under its insurance policy it did not have a duty to defend or indemnify the Defendants (Doc. 1).   Defendants answered and counterclaimed for breach of contract (Docs. 15-16).   The Court has set this case for trial in September 2015 (Doc. 23).

On October 6, 2014, Kelt and US Lawns served interrogatories and requests for the production of documents on Nationwide (Doc. 30 at 3; Doc. 31 at 3).   In its responses, Nationwide asserted a host of general and specific objections (Doc. 30 at 3; Doc. 31 at 3; Doc. 30-3).   Although it objected to many of the requests for production on the ground that the responsive documents are attorney-client privileged or subject to work-product protection, it did not include a privilege log with its response (Id.).   Counsel for the parties conferred to discuss Nationwide's objections and on December 19

Nationwide provided a privilege log and agreed to amend its responses (Doc. 30 at 3-4; Doc. 31 at 3-4; Doc. 30-4). On February 2, 2015, Nationwide served its amended responses and an amended privilege log (Doc. 30 at 4; Doc. 31 at 4; Doc. 30-5). Defendants remain unsatisfied with Nationwide's discovery responses and further attempts to resolve the parties' disagreements were unsuccessful (Doc. 30 at 4; Doc. 31 at 4; Doc. 30-6). On February 23, 2015, Kelt and US Lawns filed the pending motions to compel.

Discussion

### A. Production Requests

Federal Rule of Civil Procedure 26 states that "parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense," unless a court order provides otherwise. FED.R.CIV. P. 26(b)(1). This broad authorization reflects the intent of the discovery rules that trials in federal courts should be a search for the truth and should not be "carried on in the dark." Hickman v. Taylor, 329 U.S. 495, 501 (1947).

Although courts accord the discovery rules "a broad and liberal treatment," Id. at 507, there are limits to what a party may discover. A court "must limit the frequency or extent of discovery" upon determining that what is sought is unreasonably cumulative or duplicative or more reasonably obtainable from another source; that the requesting party has had ample opportunity to obtain information; or that the burden of the proposed discovery outweighs the likely benefits, "considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." FED.R.CIV.P. 26(b)(2)(C).

Parties may serve requests "to produce and permit the requesting party or its representative to inspect, copy, test, or sample" documents, electronically stored information, or other "tangible things" that are "in the responding party's possession, custody, or control." FED.R.CIV.P. 34(a)(1). These requests "(A) must describe with reasonable particularity each item or category of items to be inspected; (B) must specify a reasonable time, place, and manner for the inspection...; and (C) may specify the form or forms in which the electronically stored information is to be produced." FED.R.CIV.P. 34(b)(1).

The recipient of a request for production has 30 days to respond. FED.R.CIV.P. 34(b)(2)(A). For each request, the responding party "must either state that inspection ... will be permitted as requested or state an objection to the request, including the reasons." FED.R.CIV.P. 34(b)(2)(B). Documents must be produced as they are kept in the ordinary course of business or must be "organize[d] and label[ed] to correspond to the categories in the request." FED.R.CIV.P. 34(b)(2)(E)(i). When a party "fails to respond that inspection will be permitted–or fails to permit inspection–as requested under Rule 34," the requesting party can move for an order compelling production. FED.R.CIV.P. 37(a)(3)(B)(iv). "[A]n evasive or incomplete disclosure, answer, or response" to a discovery request is "treated as a failure to disclose, answer, or respond." FED.R.CIV.P. 37(a)(4).

Nationwide's responses fall short of its discovery obligations. First, Nationwide makes unexplained, boilerplate objections to certain production requests. For example, its responses to Kelt's Requests 33–36 and US Lawns' Requests 22–25 begin, "Objection vague and ambiguous," but do not explain what is vague or ambiguous about the requests. Nationwide objects that other requests are "overly broad" or not "reasonably

calculated to lead to the discovery of admissible evidence," but fails to elaborate on these

objections.   See Kelt's Requests 20-30 and US Lawns' Requests 2 and 25-20.   "'Parties

are not permitted to assert these types of conclusory, boilerplate objections that fail to

explain the precise grounds that make the request objectionable.'"   Arthrex, Inc. v.

Parcus Medical, LLC, No. 2:11-cv-694-FtM-29SPC, 2012 WL 5382050, at *3 (M.D. Fla.

Nov. 1, 2012) (quoting Martin v. Zale Delaware, Inc., No. 8:08-CV-47-T-27EAJ, 2008 WL

5255555 (M.D. Fla. Dec. 15, 2008)).   All of Nationwide's boilerplate objections are

**OVERRULED**.

   After objecting to many of the requests for production, Nationwide said that

"notwithstanding" its objections it had or would produce responsive documents.   See

Kelt's Requests 12, 16-19, 32 and 33, and US Lawns' Requests 11-14, 21 and 22.   For

example, in response to Kelt's Request No. 16, Nationwide said,

> Objection to the extent this request seeks the production of
> documents that constitute Plaintiffs [sic] claim file that were
> created after November 4, 2011, the date Plaintiff denied the
> defense of the claim as the requested documents are
> protected by the attorney-client privilege and work-product
> doctrine as set forth in the privilege log.   Said document(s)
> also constitute impermissible bad faith discovery and is/are
> not reasonably calculated to lead to the discovery of
> admissible evidence in this action.   Notwithstanding said
> objection, communications between Plaintiff and USL as they
> are kept in the usual course of business are attached hereto.

(Doc. 30 at 12).   Courts in this district and elsewhere have explained that producing

documents (or saying that no responsive documents exist) "notwithstanding" objections

"preserves nothing and wastes the time and resources of the parties and the court.

Further, this practice leaves the requesting party uncertain as to whether the opposing

party has fully answered its request."   Martin, 2008 WL 5255555, at *2; see also

Chambers v. Sygma Network, Inc., No. 6:12-cv-1802-Orl-37TBS, 2013 WL 1775046, at

*3 (M.D. Fla. Apr. 25, 2013); <u>Pepperwood of Naples Condominium Ass'n., Inc. v. Nationwide Mutual Fire Ins. Co.</u>, No. 2:10-cv-753-FtM-36SPC, 2011 WL 3841557, at *2 (M.D.Fla. Aug.29, 2011); <u>Guzman v. Irmadan, Inc.</u>, 249 F.R.D. 399, 401 (S.D. Fla. 2008); <u>Howard v. Sweetheart Cup Co.</u>, No. 00 C 648, 2001 WL 721765, at *3 (N.D. Ill. June 27, 2001).   Nationwide's objections, followed by the word "notwithstanding" are **OVERRULED**.   The Court finds that Nationwide waived any objections it may have had to Kelt's requests 16-19 and 33 and US Lawns' requests 11-14 and 22, except to the extent Nationwide properly preserved its objections based on privilege.[1]

Nationwide objected to Kelt's Requests 20-30 and US Lawns' Requests 15-20 as follows:

> Objection. The use of the term "all documents" is overly broad and this request potentially seeks documents that are protected by the attorney-client privilege and work-product document.

(<u>See</u> Doc. 30 at 13-15; Doc. 31 at 13-14).   While it is true that a request for "all documents" can result in an objectionably broad request, as for example, when a party asks for "all documents supporting your claim," the fact that a party includes the words "all documents" in a discovery request does not, by itself, make the request overbroad–a fact Nationwide seems to recognize, as it does not raise this objection to other requests that contain the words "all documents."   Nationwide's objections to the use of "all documents" in Kelt's Requests 20-24, 26-30, and US Lawns' Requests 15-19 are **OVERRULED**.   The objections to Kelt's Request 25 and US Lawns' Request 20 on this ground are **SUSTAINED**.

---

[1] In response to US Lawns' request 21 and Kelt's request 32, Nationwide produced documents "notwithstanding" objections; however, the Court will not require Nationwide to produce documents in response to these requests because it concludes that they are outside the scope of discovery.

Nationwide has also objected to Kelt's Requests 20-30 and US Lawns' Requests 15-20 on the ground that responsive documents are "potentially" privileged.   A party cannot assert a privilege by saying that responsive documents might be privileged. Objections based on privilege or work product protection must be made expressly. FED.R.CIV.P. 26(b)(5)(A)(ii).   The Court **OVERRULES** all of Nationwide's objections that the requests seek documents that are potentially protected by the attorney-client or work-product privileges.[2]

Nationwide objects that documents responsive to a number of Defendants' requests constitute "bad faith discovery," which it says includes documents that are part of the underwriting file and/or which have to do with claims handling and supervision. Nationwide argues that "[b]ad faith discovery is not allowed in this cause of action." While it does not clearly set forth the basis for its no "bad faith discovery" rule, subsequent exchanges between counsel as well as Nationwide's responses to the motions to compel make clear that it believes this information is outside the scope of discovery, or subject to work-product or attorney-client privilege (See Doc. 30-7 (suggesting that "'bad faith' objections ... include both work product and relevance concepts")).

Florida courts protect an insurer's claims file from discovery in coverage actions under the theory that the information in the file constitutes attorney work product (Doc. 35 at 5 (citing GEICO General Ins. Co. v. Hoy, 927 So.2d 122, 124 (Fla. 2d DCA 2006))). But, as Nationwide recognizes, federal law governs the scope of work product protection in this case (Doc. 35 at 5-6).   Even the cases Nationwide cites recognize that there is no

---

[2] Nationwide says all documents responsive to these requests have been produced.   If that is true, then it should have amended its responses to say so.

blanket protection of an insurer's claims or underwriting file, or prohibition on "bad faith discovery" in federal cases where coverage is disputed.   See Essex Builders Group, Inc. v. Amerisure Ins. Co., No. 6:04-cv-1838-Orl-JGG, 2006 WL 1733857, at *2 (M.D. Fla. June 20, 2006).   And, Nationwide's objections based upon privilege and/or work product protection are insufficient to comply with FED.R.CIV.P. 26(b)(5)(A)(ii).

Nationwide argues that the underwriting file is irrelevant because it does not deny that it issued the policy, it does not claim that Kelt made material misrepresentations in the application for the policy, and it does not allege that Kelt failed to pay the premiums (Doc. 35 at 10-11).   But in answering Defendants' counterclaims, Nationwide asserted estoppel, unclean hands, Defendants' "unjustifiable refusal to substantially perform ... the subject insurance contract," and the confusing, "[t]here is no coverage for the claims in question to the extent [Defendants] knew of the claims in question or potential of damages of same prior to being incurred and thus do not trigger the insuring agreement of the Policy,"[3] as affirmative defenses (Doc. 15 at 4-6; Doc. 16 at 4-6).   The Court is not persuaded that the underwriting file does not contain information relevant to one or more of these defenses.

The same is not true for Nationwide's claims manuals, policy manuals, work guidelines, and other documents bearing on Nationwide's subjective interpretation of the terms of the policy (Doc. 35 at 11-15).   If this were an ordinary breach of contract action where the parties disputed the contract's meaning, documents prepared by a party that were not part of the contract but which could reflect its interpretation of the contract would be discoverable, since they may be admissible to clarify any ambiguous terms in the

---

[3] This affirmative defense makes no sense as written.

contract.   However, ambiguous insurance contracts are strictly construed against the drafter, and in a plurality opinion, three justices of the Florida Supreme Court held that resort to extrinsic evidence to resolve ambiguities in insurance contracts is usually inappropriate.   Washington Nat'l Ins. Corp. v. Ruderman, 117 So.3d 943, 945, 949-51 (Fla. 2013) (plurality opinion).[4]   In other words, if a "reasonable interpretation of the policy provisions would provide coverage," the Court must adopt that construction and rule against the insurer.   Id. (citing Berkshire Life Ins. Co. v. Adelberg, 698 So.2d 828 (Fla. 1997)).   While the Washington plurality hinted in a footnote that extrinsic evidence may be permitted to resolve latent ambiguities in insurance contracts, see Id. at 950 n. 3, Defendants have not argued that there are any latent ambiguities in the Nationwide policy.[5]   Accordingly, Nationwide's relevance objections to Kelt's Requests 4, 9, and 32 and US Lawns' Requests 3 and 21 are **SUSTAINED**.   If the existence of a latent ambiguity in the policy becomes an issue in the case, Defendants may wish to file new motions to compel.

### B. Interrogatories

Parties can propound to one another interrogatories relating to any matter within the scope of discovery.   FED.R.CIV.P. 33(a).   The responding party must answer or object to each interrogatory within 30 days of being served with the interrogatories. FED.R.CIV.P. 33(b)(2).   "The grounds for objecting to an interrogatory must be stated with specificity."   FED.R.CIV.P. 33(b)(4).   An objection not timely stated is waived "unless the court, for good cause, excuses the failure."   Id.

---

[4] Justice Lewis concurred in the result without authoring a separate opinion.
[5] A latent ambiguity is one that is not apparent on the face of an instrument.

In dispute are a pair of interrogatories, one by Kelt (No. 8) and one by US Lawns (No. 6).   These interrogatories ask Nationwide to "[e]xplain in detail why" the agreements between US Lawns and Kelt and between BOA and US Lawns "do[] not fall under the exception to the assumed liability exclusion as ... 'insured contract[s]' as provided by section B1(b)(2) and defined at section F8f or that [Kelt or US Lawns] 'would have in the absence of the contract or agreement' as provided by section B1(b)(2)."   (Doc. 35 at 3; Doc. 36 at 3).   Nationwide objected to Kelt's interrogatory on the ground that it "seeks an opinion of counsel which is protected by the work-product privilege."   (Doc. 35 at 3).   It objected to US Lawns' interrogatory

> ...to the extent that [it] seeks information protected by attorney-client and/or work-product privileges. Notwithstanding said objection, see the Complaint foe [sic] Declaratory Relief including the applicable insurance policy(ies), Henry Lawsuit Pleadings, USL lawsuit pleadings, Master-Contractor-Vendor Agreements, Landscape Maintenance Subcontract and all other exhibits to the Complaint, Answer and Affirmative Defenses to Kelt, Inc.'s Counterclaim, and Answer and Affirmative Defenses to U.S. Lawn's [sic] Counterclaim.

(Doc. 36 at 3-4).

The Advisory Committee Notes to Rule 33(a)(2) state that "[a]n interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact."   See Advisory Committee Notes to 1970 Amendments to Rule 33 at 188.   The Advisory Committee Notes explain that "requests for opinions or contentions that call for the application of law to fact ... can be most useful in narrowing and sharpening the issues, which is a major purpose of discovery."   Id.   However, because "interrogatories involving mixed questions of law and fact may create disputes between the parties which are best resolved after much or all of the other discovery has

been completed," Rule 33(a) allows courts to "order that the interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time." Id.

The Advisory Committee Notes to Rule 26 explain how work-product protection afforded by Rule 26(b)(3) and the Supreme Court's decision in Hickman v. Taylor, 329 U.S. 495 (1947) interact with Rule 33's express authorization of contention interrogatories:

> Rules 33 and 36 have been revised in order to permit discovery calling for opinions, contentions, and admissions relating not only to fact but also to the application of law to fact. Under those rules, a party and his attorney or other representative may be required to disclose, to some extent, mental impressions, opinions, or conclusions. But documents or parts of documents containing these matters are protected against discovery by this subdivision. Even though a party may ultimately have to disclose in response to interrogatories or requests to admit, he is entitled to keep confidential documents containing such matters prepared for internal use.

See Advisory Committee Notes to 1970 Amendments to Rule 26(b)(3) at 150. The Notes strongly suggest that an assertion of work-product protection alone is not a sufficient ground for objecting to a contention interrogatory.

Nationwide argues that Defendants are not asking it to apply law to facts, but asking for an opinion on a matter of pure law. However, as the Advisory Committee Note makes clear, issues of "pure law" are those "unrelated to the facts of the case." Id. In their interrogatories, Defendants are asking Nationwide to apply contract law to the facts of the case. That the facts may be mostly undisputed does not make the issue into one of "pure law" that may not be explored by interrogatory under Rule 33. Accordingly, Nationwide's objections to the interrogatories based on work-product protection are

**OVERRULED**.   Nationwide's reference to various contracts and court records in response to US Lawns' interrogatory–which Nationwide makes no attempt to defend in its response to US Lawns' motion (see Doc. 36 at 3-4)–is also insufficient.

### C. Privilege Log

Defendants complain that Nationwide's original and amended privilege logs were both untimely and inadequate (Doc. 30 at 20-21; Doc. 31 at 19-20).   They point out that Nationwide's original privilege log was served on December 19, 2014, more than a month after it served its initial discovery responses (Doc. 30 at 21).   They also argue that even Nationwide's amended privilege log (see Doc. 30-5 at 3-4) is deficient because it fails to itemize each withheld document and fails to indicate which requests each withheld document is responsive to (Doc. 30 at 21).   Nationwide's response asserts, in conclusory fashion, that "[a]ll of [its] responses were timely."   (Doc. 35 at 15).   It also maintains that its privilege log complies with the guidance in the Court's discovery handbook (Doc. 35 at 16 (citing Middle District Discovery 17)).

Nationwide's privilege log does not provide the detail required by the Federal Rules of Civil Procedure.   A party that withholds information on the grounds of privilege must "describe the nature of the documents, communications, or tangible things not produced or disclosed–and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." FED.R.CIV.P. 26(b)(5)(a)(ii).   Counsel typically satisfy this requirement by furnishing a privilege log, listing the documents withheld along with the pertinent information for each document.

While document-by-document privilege logging is the norm, many courts, including this one, have endorsed the use of "categorical privilege logging" in appropriate

circumstances.   See Teledyne Instruments, Inc. v. Cairns, No. 6:12-cv-854-Orl-28TBS,

2013 WL 5781274, at *16 (M.D. Fla. Oct. 25, 2013); United States v. KPMG, LLP, 237 F.

Supp. 2d 35, 37 (D.D.C. 2002); In re Rivastigmine Patent Litigation, 237 F.R.D. 69, 87

(S.D.N.Y. 2006).   "Categorical privilege logging entails 'describing by category the

documents withheld on privilege grounds,'" and may be appropriate "where '(a) a

document-by-document listing would be unduly burdensome and (b) the additional

information to be gleaned from a more detailed log would be of no material benefit to the

discovering party in assessing whether a claim is well-grounded.'"   Teledyne, 2013 WL

5781274, at *16 (quoting KPGM, 347 F. Supp. 2d at 37; Rivastigmine Patent Litigation,

237 F.R.D. at 87).   "The sufficiency of a categorical privilege log turns on whether the

categories of information are sufficiently articulated to permit the opposing party to assess

the claims of privilege or work product protection."   Id.

Two entries in Nationwide's privilege log identify categories of documents, rather

than individual documents (see Doc. 30-5 at 3-4):

| Correspondence Between | Date | Title or Description of Document | Subject Matter | Specific Basis for Claim of Privilege | Bates ID Nationwide |
|---|---|---|---|---|---|
| Various Nationwide Personnel | 11/4/11 through present | Select Activity Logs | Claims Notes/ Diaries | Work Product Attorney-Client | 000001-000056 |
| All internal Nationwide correspondence, correspondence between Nationwide and Banker Lopez Gassler P.A. and other documents in its file | Various | | | Attorney-Client Work Product | 000917-000996 |

Nationwide has offered no explanation why it could not have provided an itemized

privilege log for these 136 pages.   Assuming for argument's sake that categorical

privilege logging is appropriate in this case, the categories Nationwide identifies are not

"sufficiently articulated to permit [Defendants] to assess the claims of privilege or work

product protection."   Teledyne, 2013 WL 5781274, at *16.

Nationwide's argument as to the first category of documents–those in its claims file dated November 4, 2011 or later–falls short of what Rule 26 requires.   Documents in an insurer's claim file that post-date the insurer's final decision to deny coverage are not automatically afforded protection as attorney work product.   At most, there is a "rebuttable presumption" that the documents are privileged.   Essex Builders Group, 2006 WL 1733857, at *2 (citing Harper v. Auto-Owners Ins. Co., 138 F.R.D. 655, 663 (S.D. Ind. 1991)).   The mere fact that a document in an insurer's claims file was created after the insurer denied coverage is not by itself sufficient to "permit a reasonable evaluation of whether these documents are legitimately being withheld from production."   Mosley v. American Home Assurance Co., No. 13-20259-CIV, 2013 WL 6190746, at *3 (S.D. Fla. Nov. 26, 2013).   The second category is far too vague and generalized to allow Defendants to assess Nationwide's claims of privilege and work product protection, and Nationwide's suggestion to the contrary (see Doc. 35 at 16) is frivolous.

Additionally, Nationwide's assertion that its November 4, 2011 letters to Kelt and US Lawns triggered the rebuttable presumption of privilege for subsequently created documents appears to be in tension with Nationwide's position, taken in its summary judgment motion, that US Lawns had a duty to cooperate with Nationwide in defending the claim against BOA because Nationwide had not "outright deni[ed]" US Lawns' claim (Doc. 27 at 12-15).   Thus, Nationwide is attempting to obtain summary judgment on the (supposed) factual premise that it had not yet denied coverage, while at the same time, refusing to produce its claim file on the ground that it anticipated litigation after "refusing to defend" US Lawns (Doc. 35 at 7).   This is an additional reason to reject Nationwide's categorical assertion of privilege for all documents in the claim file created on or after November 4, 2011.

When a party provides an inadequate or untimely privilege log, the Court may

choose between four remedies: (1) give the party another chance to submit a more

detailed log; (2) deem the inadequate log a waiver of the privilege; (3) inspect *in camera*

all of the withheld documents; and (4) inspect *in camera* a sample of the withheld

documents.   NLRB v. Jackson Hospital Corp., 257 F.R.D. 302, 307 (D.D.C. 2009).   In

shaping a remedy, the Court should consider "how inadequate the log is" in light of all

relevant factors.   Id.   Relevant factors include:

> "the degree to which the objection or assertion of privilege
> enables the litigant seeking discovery and the court to
> evaluate whether each of the withheld documents is privileged
> (where providing particulars typically contained in a privilege
> log is presumptively sufficient and boilerplate objections are
> presumptively insufficient); the timeliness of the objection and
> accompanying information about the withheld documents
> (where service within 30 days, as a default guideline, is
> sufficient); the magnitude of the document production; and
> other particular circumstances of the litigation that make
> responding to discovery unusually easy (such as, here, the
> fact that many of the same documents were the subject of
> discovery in an earlier action) or unusually hard."

Universal City Development Partners, Ltd. v. Ride & Show Engineering, Inc., 230 F.R.D.

688, 695 (M.D. Fla. 2005) (quoting Burlington Northern & Santa Fe Ry. V. United States

District Court for the District of Montana, 408 F.3d 1142 (9th Cir. 2005)).

The two expansive categories in Nationwide's privilege log make it impossible to

determine whether or not the documents falling into them are actually privileged or

subject to work product protection.   Nationwide took over a month after serving its initial

responses to Defendants' production requests to serve its inadequate privilege log, and it

did not provide additional information even after Defendants called the inadequacy of the

log to Nationwide's attention.   Instead, Nationwide has continued to assert that "all

internal Nationwide correspondence" was privileged even after Defendants filed their

motion.   The minimal nature of Nationwide's production (less than 1,000 pages, including documents withheld on privilege grounds) makes its failure to provide an adequate privilege log all the more inexcusable.   Now, the Court finds that Nationwide has waived privilege for all documents except (1) the eight documents specifically identified in the amended privilege log; and (2) communications between Nationwide employees and its outside counsel at the law firm Banker Lopez Gassler, P.A., that were for the purpose of seeking or receiving legal advice.   Nationwide shall produce an itemized privilege log of the communications between its employees and its outside counsel at the law firm Banker Lopez Gassler, P.A., that were for the purpose of seeking or receiving legal advice.

### D. Production Log

Defendants argue that Nationwide's production fails to comply with Rule 34(b)(2)(E)(i), which requires a party to "produce documents as they are kept in the usual course of business or ... organize and label them to correspond to the categories in the request."   Defendants allege that Nationwide "simply produced documents *en masse*," without providing "any sort of spreadsheet or matrix indicating what documents were being produced or to which Request(s) each of the documents produced is responsive." (Doc. 30 at 23).   Defendants doubt that the documents were produced as Nationwide keeps them in the usual course of its business because they "were not separated in any discernable manner.   Although each document was provided as a separate computer file, there were no file folders.   There were no dividers.   There was no indication whatsoever of where they were kept and maintained at Nationwide's offices or by whom." (Doc. 30 at 23).

Nationwide maintains that it produced its documents as it keeps them in the usual course of business, and has attached a declaration from an employee who states that the documents in the file span a period of time when Nationwide was transitioning from paper to paperless record keeping (Doc. 34 at 3; Doc. 35 at 17-19).   In addition to its paper file, the employee declares that Nationwide has a paperless file linked with the claims notes. Those notes and images cannot be changed after they are logged, each image is a numbered file that corresponds to a .pdf file and, the claims notes and corresponding images are arranged in chronological order (Id., at 3).   According to Nationwide's attorney:

> [a]ll of the files [it] produced were in electronic format exactly as those files were received by Nationwide's counsel, with the exception that counsel added Bates stamps.   The documents contained within the paper file were produced in a .pdf file entitled "paper file."   Not only did Nationwide's records contain a paper file, but also documents maintained electronically.   The file contains "images" that are associated with the claims notes.   Once the claims notes and images are added, they cannot be altered.   The "image" .pdf file is identified with a file name that contains the claim number-image number.   There were no files or dividers as those documents were linked to entries in the claims diary.   Simply because [Defendants'] counsel thinks it is hard to believe that this is how documents are kept by Nationwide does not mean that is not how they were actually kept in the usual course of business.   The documents were received by the undersigned counsel in the same way they were produced to [Defendants'] counsel, thus the burden of identifying each document contained within each image is the same for each.   It should be noted that the documents are in chronological order and they are not sitting in a pile in its office.

(Doc. 35 at 18 (citing Doc. 34, ¶¶ 12-13)).

A party who elects to produce documents as they are kept in the usual course of business bears the burden of proving that the documents were in fact produced in that manner.   Pass & Seymour, Inc. v. Hubbell Inc., 255 F.R.D. 331, 334 (N.D.N.Y. 2008)

(citing <u>Johnson v. Kraft Foods North America, Inc.</u>, 236 F.R.D. 535, 540 (D. Kan. 2006); <u>Cardenas v. Dorel Juvenile Group, Inc.</u>, 230 F.R.D. 611, 618 (D. Kan. 2005)).   "To carry this burden, a party must do more than merely represent to the court and the requesting party that the documents have been produced as they are maintained."   <u>Id.</u> (citing <u>Johnson</u>, 236 F.R.D. at 540-41; <u>Cardenas</u> 230 F.R.D. at 618).

A responding party may not wait until a motion to compel is filed to provide this information.   When a party chooses to produce documents as they are kept in the usual course of business, Rule 34 "contemplates that [the responding] party ... disclose information to the requesting party regarding how the documents are organized in the [responding] party's ordinary course of business."   <u>Pass & Seymour</u>, 255 F.R.D. at 335. As the Middle District Discovery handbook explains, if "documents are produced as they are kept in the usual course of business, the producing party has an obligation to explain the general scheme of record-keeping to the inspecting party.   The objective is to acquaint the inspecting party generally with how and where the documents are maintained."   <u>Middle District Discovery</u> 13 (2001).[6]

Nationwide failed to provide any explanation or detail supporting its assertion that it was producing documents as they are kept them in the usual course of its business until February 18, 2015, more than two weeks after it served its amended responses to Defendants' discovery requests.   Even then, Nationwide's explanation was inadequate. In an email responding to a Rule 37(a)(1) inquiry by opposing counsel, Nationwide's attorney asserted that

> "[t]he documents are exactly as they were provided to us by
> Nationwide and as Nationwide keeps the documents in its

---

[6] The Middle District Discovery (2001) handbook can be found on the Court's website, http://www.flmd.uscourts.gov, under the "Forms & Publications" tab.

> files. We simply added bates numbers.   You will note that the
> .pdf files are in chronological order.   The file named paper file
> are scanned documents maintained in the paper file.

(Doc. 30-7 at 1).   There is nothing to indicate that Nationwide actually explained how its

documents are organized until it responded to Defendants' motions a week after the close

of discovery–effectively depriving Defendants of any opportunity to assess and verify

Nationwide's assertion that it produced the documents as it keeps them in the usual

course of business.   Cf. Pass & Seymour, 255 F.R.D. at 334 ("Before Hubbell's motion

was filed, P & S had provided literally no additional information regarding its search for

the documents, including where the documents produced were maintained, whether they

came from a single source file or from multiple points of origin, the identity of the record

custodians, and the manner in which they were organized.").

The Court finds that Nationwide did not comply with the requirements of Rule

34(b)(2)(E)(i), because it failed to explain to Defendants how it maintained the documents

in the usual course of business or alternatively, organize its production by request.   At

this late stage in the litigation, the most appropriate remedy is to require Nationwide to

identify by Bates number which documents are responsive to each request.

### E. Attorney's Fees and Costs

When a court grants a motion to compel, or the requested discovery is provided

after the motion is filed, the requesting party is entitled to its costs, including reasonable

attorney's fees, unless: (i) the requesting party failed to make a good faith attempt to

obtain the discovery without a court order; (ii) the responding party's position was

substantially justified; or (iii) other circumstances make an award of expenses unjust.

FED.R.CIV.P. 37(a)(5)(A).   If a motion to compel is denied, the party opposing the motion

is entitled to recover its expenses, unless the motion was substantially justified or other

circumstances make an award of expenses unjust.   FED.R.CIV.P. 37(a)(5)(B).   If a

motion is granted in part and denied in part, the court may make a reasonable

apportionment of expenses for the motion.   FED.R.CIV.P. 37(a)(5)(C).

The Court has granted Defendants most of the relief they requested.   Moreover,

most of Nationwide's positions lacked any substantial justification, and no other

circumstances make an award of fees to Defendants unjust.   Accordingly, the Court finds

that Nationwide is liable to Defendants for their reasonable legal expenses incurred in

connection with the motions to compel.

Conclusion

For the reasons stated above, it is hereby **ORDERED** that:

1.   The motions to compel filed by Kelt and US Lawns are **GRANTED in PART**

and **DENIED in PART**.

2.   Nationwide's objections to Kelt's requests 4, 9, 25, and 32 and US Lawns'

requests 3, 20, and 21 are **SUSTAINED**.

3.   Nationwide's objections based on privilege or work-product protection are

**SUSTAINED** as to the eight documents specifically identified in Nationwide's Amended

Privilege Log, as well as to any communications between Nationwide and the law firm

Banker Lopez Gassler, P.A., that are properly identified in a privilege log.

4.   Nationwide has **WAIVED** any privilege or work product protection as to all

other documents, and its objections on those grounds are **OVERRULED** as to those

documents

5.   Nationwide's remaining objections to Defendants' discovery requests are

**OVERRULED**.

6.   Within 14 days of the date of this Order, Nationwide shall:

a.   Serve answers to Defendants' interrogatories and responses to

Defendants' requests for production, except for the five mentioned in ¶ 2 that

comply with the Federal Rules of Civil Procedure;

b.   Produce all documents responsive to Defendants' production requests,

except those documents described in ¶¶ 2 and 3;

c.   Serve on Defendants a production log identifying by bates number

which documents are responsive to each of Defendants' requests; and

d.   Serve on Defendants a privilege log that complies with

FED.R.CIV.P. 26(b)(5)(a)(ii).

7.   Within 14 days of this order, the parties shall agree upon the amount of

attorney's fees and costs to award Defendants, or Defendants shall file a motion for fees

and costs with the Court, following which Nationwide shall have 14 days to respond.

**DONE** and **ORDERED** in Orlando, Florida on March 30, 2015.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to Counsel of Record